**Patrick HEALY and Carolyn Healy, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 92–4008.

United States District Court, D. South Dakota, S.D.

Feb. 3, 1994.

John E. Burke, Sioux Falls, SD, for plaintiffs.

Charles P. Hurley, Trial Atty., Washington, DC, for defendant.

*MEMORANDUM OPINION and ORDER*

JOHN B. JONES, Chief Judge.

Patrick and Carolyn Healy seek a refund of federal income taxes for the years 1985 through 1988, in the amount of $20,012.70, plus interest. The Healys contend that the rate they used for valuing the benefit they received as income for federal tax purposes as a result of life insurance benefits paid by Patrick's employer meets the requirements of Internal Revenue Service revenue rulings.

The parties have agreed that this action is to be decided by the Court on the pleadings, depositions, and briefs on file with the Court without a trial or hearing.

## FACTS

On December 30, 1984, Patrick Healy was issued a $2 million whole life insurance policy by The Great West Life Assurance Company.

This policy was acquired pursuant to a split-dollar insurance agreement between Patrick and his employer. The split-dollar arrangement involves the employer purchasing an insurance policy, containing a substantial investment element, on the employee's life. Rev.Rul. 64–328, 1964–2 C.B. 11. The particular agreement at issue is referred to as a collateral assignment arrangement. *Id.* Under the agreement at issue, the employee is required to pay the annual premiums on the policy. *Id.* However, the employer is required to loan him the amount of the premiums. *Id.* The employee assigns the policy to the employer as collateral security for the annual premium loans. *Id.* Upon Patrick's death, the employer receives the full amount of the premiums paid by it and the beneficiary, Carolyn, receives the remainder. If Patrick's employment is terminated or the policy is terminated, the employer receives the cash surrender value of the policy.

From the employee's perspective, a split-dollar arrangement converts a whole life policy into a term policy at no cost to the employee. *Id.* The employee receives an economic benefit in "an amount equal to the 1–year term cost of the declining life insurance protection" which the employee receives as a result of the arrangement. *Id.* The employee must then include this amount as gross income on his tax return.

On their 1985 tax return, Plaintiffs reported the economic benefit using rate tables provided by the IRS for valuing split-dollar life insurance policies. Plaintiffs subsequently sought to amend their 1985 return using a substantially lower rate table provided by Great West Life Assurance Company. Plaintiffs also used this lower rate table in computing their 1986 through 1988 tax returns.

The lower rate table used by Plaintiffs provides a 2% commission on the first-year premium to the agent selling the policy. Most policies provide a 50% commission on the first-year premium to the agent.

The IRS disallowed Plaintiffs' amendment of their 1985 tax return and assessed additional taxes against Plaintiffs for the years 1986 through 1988 based on the higher IRS rate tables. Plaintiffs have paid the additional taxes and seek a refund of those amounts.

## DISCUSSION

As discussed above, an employee must report as gross income the value of the benefit received, i.e. the value of 1–year term life insurance. The IRS has provided a table in Revenue Ruling 55–747 which taxpayers may use to compute the cost of 1–year term insurance.

Revenue Ruling 66–110, 1966–1 C.B. 12, provides that:

> In any case where the current published premium rates per $1,000 of insurance protection charged by an insurer for individual 1–year term life insurance available to all standard risks are lower than those set forth in Revenue Ruling 55–747, such published rates may be used in place of the rates set forth in that Revenue Ruling for determining the cost of insurance in connection with individual policies issued by the same insurer and used for "split dollar arrangements"....

A subsequent Revenue Ruling issued by the IRS provides guidance on what rates may be substituted for valuing the economic benefit of split-dollar arrangements. Rev. Rul. 67–154, 1967–1 C.B. 11, provides that the rate which the taxpayer seeks to substitute for the IRS rate must be a rate charged for initial issue insurance, available to all standard risks seeking to purchase only a basic policy of insurance. In other words, the substituted rate must be available to all standard risks, regardless of whether that person has existing coverage with the company.

The parties and the Court have not discovered any reported court or IRS decisions which interpret the words "published" or "available to all standard risks". Consequently, these issues are matters of first impression.

The Government contends in its brief that the rates used by Plaintiffs "are not 'published' within the meaning of the Revenue Rulings.... [because] [t]he rates are not made known to the public through general circulation publications such as in Best's Flitcraft Compend which reports the premium rates of various insurance companies."

This contention is directly refuted by the deposition testimony of Brian Lau, Ph.D., Manager of Individual Product Development at Great West. In response to questioning by the Government, Mr. Lau testified at his deposition that the rate on the particular policy at issue is published in Best's Flitcraft, as well as in a rate book sent to agents and branch managers. (Lau Depo., p. 32, lines 7–14).

Furthermore, the rates used by Plaintiffs were available to all standard risks. In a letter to Plaintiffs' accountant, John Wenande, Mr. Lau states: "The rates shown are available to any individual who applies and meets Great West's underwriting standards for term insurance." (Exh. 8 to Lau Depo.). At his deposition, Lau also testified that he agreed that the rates at issue were available to all standard risks. (Lau Depo., p. 42, lines 2–13).

Lau also testified at length throughout his deposition that the rates at issue were available to anyone who filled out an application for insurance and submitted it.

The Government has presented no evidence to support its assertions that the rates at issue were not published or that the rates were not available to all standard risks. Moreover, Lau's deposition testimony directly rebuts the assertions made by the Government on those issues.

The Court finds based on the record in this case that the rates used the Plaintiffs meet the criteria set forth in the applicable Revenue Rulings.

Therefore, upon the record herein,

IT IS ORDERED:

(1) That the Clerk of Courts enter judgment in favor of the Plaintiffs in the amount of $20,012.70 together with prejudgment interest as provided by law, and their taxable costs.